*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELAINE KEYMO MURRIEL,

       Plaintiff-Appellee,

v

CITY OF DETROIT,

       Defendant-Appellant,

and

GARY STEELE and DETROIT POLICE
DEPARTMENT,

       Defendants.

UNPUBLISHED
February 21, 2023

No. 359528
Wayne Circuit Court
LC No. 19-006174-NO

ELAINE KEYMO MURRIEL,

       Plaintiff-Appellee,

v

CITY OF DETROIT and DETROIT POLICE
DEPARTMENT,

       Defendants,

and

GARY STEELE,

       Defendant-Appellant.

No. 359530
Wayne Circuit Court
LC No. 19-006174-NO

Before: K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

PER CURIAM.

-1-

In these consolidated appeals,[1] in Docket No. 358528, defendant City of Detroit (the "City") appeals by right the trial court's order denying the City's motion for partial summary disposition under MCR 2.116(C)(7) on the basis of immunity. In Docket No. 358530, defendant Gary Steele appeals by right the trial court's order denying Steele's motion for partial summary disposition under MCR 2.116(C)(7), which was also offered on the basis of immunity. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the arrest of plaintiff Elaine Keymo Murriel in Detroit, Michigan on May 31, 2018. On the date at issue, plaintiff claimed she was dropping off her child with Andre Hollis, the child's father, who lived on Faust Road and Dover Road in Detroit when she saw Ashante Moore driving her vehicle near the same intersection. Moore was, according to plaintiff, dating Hollis, and plaintiff had obtained a personal protection order ("PPO") against Moore after Moore previously tried to run over plaintiff with her car.

Plaintiff claimed that when Moore saw plaintiff removing her child, Moore attempted to hit plaintiff with her car "by driving her vehicle at Plaintiff's body, in an attempt to run her over." Seeing that Moore was attempting to hit her, plaintiff claimed she drew her lawfully-carried firearm and shot at Moore. As a result of the gunfire, police were called to the scene.

When officers arrived, plaintiff informed them that she had a firearm in the trunk of her car and it was used to shoot at a vehicle that was trying to hit her. While other officers were speaking with plaintiff, Steele went to Moore's house to speak with her, who stated that she and plaintiff only got into a verbal altercation. According to police, Moore stated plaintiff "had just fired shots at her vehicle, while she was driving on Faust and Dover, after a verbal altercation, then followed her home and fired additional shots at her and the occupants of her vehicle [2 children] as she ran inside her home."

Steele stated that upon observation, he noticed bullet holes in the back of Moore's car. According to Steele, the location of the bullet holes suggested that Moore was driving away from plaintiff, not toward her, at the time plaintiff fired her gun. After interviewing Moore and observing the vehicle, Steele decided to place plaintiff under arrest.

When Steele advised plaintiff that she was under arrest, plaintiff "began to back away, refusing to give her child to the officers." After one officer was able to take plaintiff's child, Steele attempted to place handcuffs on plaintiff, causing plaintiff to make a "sudden turn." At this point, plaintiff's "left arm ended up above her head and when Corporal Steele attempted to place [plaintiff]'s arm behind her back, [plaintiff] sustained a fractured left ulna (elbow)."

For her part, plaintiff alleged that while she was holding her son, Steele suddenly decided to place her under arrest. Before plaintiff was able to pass her child to a relative, plaintiff claimed that an officer "grab[bed] and rip[ped]" the child from her arm. After her child was taken, plaintiff

---

[1] *Murriel v Detroit*, unpublished order of the Court of Appeals, entered December 14, 2021 (Docket Nos. 358528, 358530).

stated that Steele then pushed her up against a car and "violently" grabbed her arms. As Steele twisted her arms to put handcuffs on her, he pulled her left arm in such a way that her elbow bent in an unnatural manner and was broken. Plaintiff claimed that Steele's use of force was unnecessary and unjustified, because no officers saw her commit a crime and she was not armed while she was being arrested. According to plaintiff, Steele would not give plaintiff aid and other officers had to call an ambulance.

Plaintiff filed a complaint on April 29, 2019, naming the City, Steele, and the Detroit Police Department ("DPD") as defendants. In Count I, plaintiff alleged Steele was grossly negligent and exhibited wanton and willful conduct when arresting plaintiff with excessive force. In Count II, plaintiff alleged violations of the Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq.* ("ELCRA"), against all defendants.[2]

Steele moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), claiming plaintiff failed to state a claim regarding the count for gross negligence and wanton and willful conduct. Steele also argued that his conduct was immune from suit under the Governmental Tort Liability Act MCL 691.1401 *et seq.* ("GTLA"), asserting that the arrest of plaintiff did not amount to gross negligence. Lastly, Steele argued that plaintiff could not show race discrimination under the ELCRA. On April 12, 2021, the trial denied the motion.

Defendants subsequently filed a second round of summary disposition motions, this time arguing that the ELCRA did not waive immunity over tort actions and, because plaintiff was seeking money damages for a tort, the defendants were immune from liability. Again, the trial court denied the motions, concluding that the GTLA did not bar plaintiff's ELCRA claims because immunity was waived under the ELCRA. These appeals followed.

## II. ANALYSIS

### A. JURISDICTION

In her counterstatement on jurisdiction, plaintiff argues that this Court does not have jurisdiction to consider defendants' arguments relating to gross negligence and immunity—presented in Issue I of their brief on appeal——because defendants do not have an appeal by right over the issue nor can they seek leave to appeal. Plaintiff also argues the Court does not have jurisdiction to consider defendants' arguments relating to whether plaintiff made a prima facie case for discrimination under the ELCRA—presented in Issue II of defendants' brief—for the same reasons. We agree.

This Court reviews de novo the question of whether the Court has jurisdiction over defendants' claim of appeal. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820

---

[2] Shortly after plaintiff filed her complaint, the DPD moved for summary disposition under MCR 2.116(C)(8). DPD argued that plaintiff failed to state a claim under the ELCRA and that it was not an entity separate from the City such that it could be sued independently. On August 26, 2019, the trial court granted DPD's motion, concluding that it was not an entity distinct from the City for purposes of being sued. The trial court's order granting DPD's motion is not at issue on appeal.

(2009). "The jurisdiction of the Court of Appeals is governed by statute and court rule." *Id*. This Court has jurisdiction over claims of appeal by right from

> A final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6), except a judgment or order of the circuit court
>
> (a) on appeal from any other court or tribunal;
>
> (b) in a criminal case in which the conviction is based on a plea of guilty or nolo contendere[.]  [MCR 7.203(A)(1).]

As relevant here, a final order under MCR 7.203 includes "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity."  MCR 7.202(6)(a)(v).  An appeal from an order denying governmental immunity "is limited to the portion of the order with respect to which there is an appeal of right."  MCR 7.203(A)(1).  Unless a statute or rule provides otherwise, a party must file a claim of appeal within 21 days of entry of the final order from which the party appeals.  MCR 7.204(A)(1).

The question presented in Issue I of defendants' appeal states "Does Michigan's Governmental Tort Liability Act, MCL 691.1407, bar a claim for money damages for gross negligence against a police officer who is protected with governmental immunity."  In the subsequent argument, defendants argue the trial court erred when it denied Steele's motion for summary disposition because the GTLA does not permit recovery where the plaintiff fails to show that the defendant's gross negligence was the proximate cause of the plaintiff's injury.

Defendants would, in the abstract, have an appeal by right over the trial court's order denying summary disposition on the basis of immunity.  See MCR 7.202(6)(a)(v).  However, the trial court's order addressing defendants' argument concerning immunity, gross negligence, and proximate causation was entered on April 12, 2021, and defendants did not file their claim of appeal until December 8, 2021, almost nine months after the entry of the order.  The motions for summary disposition from which defendants did ultimately file a timely claim of appeal did not raise the issue of immunity in the context of gross negligence or proximate causation.  Thus, because defendants did not timely file a claim of appeal from the trial court's April 12, 2021 order, we lack jurisdiction to consider defendants' arguments related to immunity and gross negligence or proximate causation.

We also lack jurisdiction over defendants' argument that the trial court erred because plaintiff failed to make a prima facie showing of discrimination.  The question of whether plaintiff made a prima facie case for discrimination is not related to whether defendants have immunity from suit under the ELCRA when a plaintiff seeks money damages.  In other words, while it would be true that the outcome of the case would be the same for defendants if the Court decided in their favor on immunity grounds or on the merits, this Court's jurisdiction exists only over the portions of the order from which there is an appeal by right.  Because defendants do not have an independent appeal by right regarding the underlying merits of plaintiff's ELCRA claim, it cannot surreptitiously include such bases for reversal at this stage.  See MCR 7.203(A)(1) (stating an

-4-

appeal from an order denying governmental immunity "is limited to the portion of the order with respect to which there is an appeal of right."). Moreover, like Issue I, Steele raised this issue in his first motion for summary disposition that was denied on April 12, 2021 and from which defendants did not file a timely claim of appeal.

Lacking an appeal by right, the question turns to whether it is within this Court's authority to nevertheless treat these issues as requests for leave to appeal from which there is not an appeal by right. We cannot, because they would not be timely even under such circumstances. Under MCR 7.205(4)(a), a litigant may submit a delayed application for leave to appeal; however, such appeal must be "filed within 6 months of the entry of a judgment or order . . . ." In this case, the subject order concerning defendants' jurisdictionally-problematic arguments was entered on April 12, 2021. Defendants filed their claim of appeal approximately nine months later. Accordingly, this Court is without authority to consider these arguments for lack of jurisdiction, even as a delayed application for leave to appeal, and will only consider the single issue presented by defendants that is not barred by lack of jurisdiction: whether defendants have immunity from a suit for money damages under the ELCRA. See *Chen*, 284 Mich App at 193 ("The establishment of a firm deadline prevents stale applications for leave to appeal; it forces the parties to raise claims of error while the participants still have a sound grasp of the facts and events surrounding the litigation.").

### B. IMMUNITY

Defendants argue that the trial court erred when it denied their motions for summary disposition because when a litigant seeks money damages under the ELCRA, the defendant may raise immunity under the GTLA as a way to avoid liability. According to defendants, the myriad cases that hold otherwise were either stated in dicta or were wrongly decided. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Genesee Co Drain Comm'r v Genesee Co*, 321 Mich App 74, 76; 908 NW2d 313 (2017). A party is entitled to summary disposition under MCR 2.116(C)(7) "if the plaintiff's claims are barred because of immunity granted by law." *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008) (quotation marks and citations omitted). "The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence, the substance of which would be admissible at trial." *Id*. (quotation marks and citation omitted). "The contents of the complaint are accepted as true unless contradicted by the evidence provided." *Id*. (quotation marks and citation omitted). This Court also reviews de novo questions of statutory interpretation. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). "In the absence of ambiguities, judicial construction is neither necessary nor permitted." *Id*. (quotation marks and citation omitted).

The ELCRA prohibits, among other forms of discrimination, a "person" from denying "an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." MCL 37.2302(a). A "person" is defined under the ELCRA as "an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, *the state or a political*

*subdivision of the state or an agency of the state*, or any other legal or commercial entity." MCL 37.2103(g) (emphasis added). A "political subdivision" is likewise defined under the ELCRA as "a county, city, village, township, school district, or special district or authority of the state." MCL 37.2103(h).

A cause of action under the ELCRA is governed by MCL 37.2801, which states:

> (1) A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.

> (2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business.

> (3) As used in subsection (1), "damages" means damages for injury or loss caused by each violation of this act, including reasonable attorney's fees.

Defendants assert that immunity under the GTLA applies to suits for money damages under the ELCRA. In relevant part, the GTLA states:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(1)-(2).]

Beginning with *Manning v Hazel Park*, 202 Mich App 685; 509 NW2d 874 (1993), this Court and the Michigan Supreme Court have held that the GTLA does not apply to violations of

the ELCRA. In *Manning*, the plaintiff filed suit after she was forced to retire from her position as city manager and, included among her claims, was a sex and age discrimination claim under the ELCRA. *Manning*, 202 Mich App at 688-689. After concluding the trial court erred when it dismissed the plaintiff's discrimination claims, the Court stated: "Concerning the sex and age discrimination claims, defendants do not have a governmental immunity defense because the Civil Rights Act specifically includes state and political subdivisions and their agents as employers covered by the act." *Id*. at 699, citing MCL 37.2103 and MCL 37.2201. The Court continued: "Governmental immunity is not a defense to a claim brought under the Civil Rights Act."

The Michigan Supreme Court reaffirmed this general principle in *Mack v Detroit*, 467 Mich 186; 649 NW2d 47 (2002), a case that concerned sex discrimination claims brought under the City of Detroit's charter. *Mack*, 467 Mich at 190-191. While the Supreme Court concluded that the plaintiff's claim under the charter was barred by immunity, the Court contrasted its holding with respect to the charter with other laws, outside of the express exceptions listed in the GTLA, in which immunity was waived. *Id*. at 195. Among the examples listed by the Court was the ELCRA. *Id*. ("[T]here are other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act.").

In *Diamond v Witherspoon*, 265 Mich App 673; 696 NW2d 770 (2005), this Court again held that the GTLA was not a defense to a claim brought under the ELCRA. *Diamond*, 265 Mich App at 690-691. There, the plaintiffs filed suit under the ELCRA and 42 USC 1983 regarding the conduct of a former DPD sergeant, whom the plaintiffs accused of criminal sexual conduct during traffic stops. *Id*. at 676. The plaintiffs ultimately obtained a jury verdict against the City of Detroit for over $2 million. *Id*. at 680. On appeal and as relevant here, the City argued it was "immune from any liability because no exception applies to the immunity granted to it under the GTLA." *Id*. at 690-691. Citing *Mack* and *Manning*, we rejected the argument: "Governmental immunity is not a defense to a claim brought under the CRA. The Legislature has allowed specific actions against the government to stand, such as one under the CRA. The CRA specifically includes state and political subdivisions as entities covered by the act." *Id*. at 691 (citations omitted).

After *Diamond*, the Michigan Supreme Court decided *In re Bradley Estate*, a case cited favorably by both parties. *In re Bradley Estate* was a case concerning a civil contempt proceeding involving indemnification damages brought by the sister of a deceased man who committed suicide after he was supposed to be taken into protective custody by order of the probate court. *In re Bradley Estate*, 494 Mich at 371-372. The petitioner brought a wrongful-death action against the Kent County sheriff and the Kent County Sheriff's Department for failing to timely execute the probate court's order, leading to the deceased's death. *Id*. at 373-374. Similar to *Mack*, the Court concluded that the money damages sought by the petitioner were covered by the GTLA because the petitioner sought "responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages." *Id*. at 385. And similar to *Mack*, the Supreme Court again highlighted the fact that the Legislature enacted laws that were not subject to the GTLA, such as the ELCRA. *Id*. at 393 n 60. Indeed, the Court noted that the Legislature "expressly waiv[ed] governmental immunity" under the ELCRA, which it did not do under MCL 600.1721. *Id*.

Lastly, in *Does 11-18 v Dep't of Corrections*, 323 Mich App 479, 490; 917 NW2d 730 (2018), this Court addressed the defendants' argument that inmates' civil rights claims brought

under the ELCRA were barred by immunity under the GTLA. *Does 11-18*, 323 Mich App at 483-484. The inmates alleged that while minors, they were housed with adults that "took advantage of their youth to commit sexual and physical abuse and harassment." *Id*. at 484. Citing *Manning*, *Diamond*, *Mack*, and *In re Bradley Estate*, the Court stated that the "law is clear that governmental immunity does not apply to ELCRA claims." *Id*. at 490.

The plain language of the ELCRA supports the reasoning in these cases that, by enacting the ELCRA, the Legislature intended to waive immunity over claims brought under it. Waiver of immunity from liability—as opposed to liability from suit—may be done through "express statutory enactment or by necessary inference from a statute." *Anzaldua v Band*, 457 Mich 530, 550; 578 NW2d 306 (1998) (quotation marks and citation omitted). As noted in *In re Bradley Estate*, the Legislature "expressly waiv[ed]" immunity under the ELCRA. *In re Bradley Estate*, 494 Mich at 393 n 60. While it is true the ELCRA does not specifically reference the GTLA, the ELCRA explicitly includes the state, its political subdivisions, and individuals as "persons" prohibited from engaging in unlawful discrimination. See MCL 37.2103(g), (h). Thus, at a minimum, the necessary inference from the ELCRA is that the Legislature waived immunity when it included the state and its political subdivisions as entities capable of being sued for money damages and injunctive relief. MCL 37.2801.

We reject the suggestion by defendants that this Court should overrule *Diamond*, *Does 11-18*, and *Manning*, and ignore the arguable dicta from *In re Bradley Estate* and *Mack*. Even if the Michigan Supreme Court's statements in *In re Bradley Estate* and *Mack* that the Legislature waived immunity for suits brought under the ELCRA was dicta, this Court is nevertheless bound by *Diamond*, *Does 11-18*, and *Manning*. See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").

Affirmed. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray
/s/ Brock A. Swartzle