# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

SPARTAN SPECIALTIES, LTD.,

        Plaintiff/Counter-Defendant-
Appellant,

v

SENIOR SERVICES, INC.,

        Defendant/Counter-Plaintiff-
Appellee.

UNPUBLISHED
July 20, 2017

No. 331528
Kalamazoo Circuit Court
LC No. 2013-000499-CK

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Plaintiff, Spartan Specialties, Ltd, appeals as of right the November 23, 2015 judgment. Following a jury trial, in accordance with the jury's verdicts, the trial court entered judgment in favor of plaintiff in the amount of $0 on plaintiff's claim for breach of contract and judgment in favor of defendant, Senior Services, Inc., in the amount of $0 on defendant's counterclaim for breach of contract. We affirm.

Defendant built a commercial kitchen, the Pauline Allen Nutrition Center, in 1997. Within a year, the kitchen's floor had started to settle. As part of "a major repair" for the commercial kitchen, defendant contracted with plaintiff for the installation of 305 mini-piles under the kitchen's floor. Under the contract, plaintiff was to complete the work described in "the Contract Documents."

Two of the contract documents, the drawings and the project manual, included specifications for the mini-piles. The drawing that showed where the mini-piles were to be installed under the floor included the following specifications:

FS-1   Mini-pile capacity to be 6000 pounds; unfactored load, plus 3.0 safety factor.

FS-2   Pile capacity is to be verified by at least two pile load tests. . . .

\* \* \*

FS-6   Length of mini-pile installation is to be adequate to get through the organic and fill soils below the slab and into undisturbed soil to a depth adequate for obtaining the required capacity. . . .[1]

The specifications in the project manual provided, in pertinent part:

3.11   The piles should have a minimum-working load of 4 tons and 3 tons per pile as noted on the drawings and a minimum factor of safety of 3.0.

3.12   The piles should be driven to a minimum of 25 feet below the slab level.

* * *

3.15   A grout bulb should be formed at the base of the mini-pile with a minimum diameter of 2.0 feet.

The project manual provided that "[i]n the case of an inconsistency between Drawings and Specifications or within either Document not clarified by an addendum, the better quality or greater quality of Work shall be provided in accordance with the Architect's interpretation."

Plaintiff finished installing the mini-piles in October 2007. Two mini-piles were tested, one in August 2007 and one in October 2007, and both mini-piles met the required capacity. However, plaintiff did not drive all the mini-piles to a minimum depth of 25 feet and it only used one grout bulb, which defendant believed were requirements of the contract. Plaintiff sued defendant for breach of contract in October 2013, after it submitted its second application for payment and defendant refused to pay. Defendant counterclaimed for breach of contract.

On appeal, plaintiff argues that the trial court erred in not striking Nathan Whitaker from defendant's witness list. The trial court held that Whitaker was not qualified to testify as an expert witness, but he could testify as a lay witness regarding matters within his personal knowledge, including quotations that he had prepared for defendant in 2014. We review a trial court's evidentiary decisions for an abuse of discretion. *Zaremba Equip v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id.*

Most of plaintiff's argument concerns why Whitaker was not qualified to give testimony about "foundation failures" and remediation of those failures. However, Whitaker did not testify that the floor of the mechanical room in the commercial kitchen had settled and how the settlement should be remediated. Rather, Whitaker testified to a plan that would render the floor of the mechanical room irrelevant so that, if the soils underneath the room settled, the settlement

---

[1] The drawing for the mini-piles that would be used to support the interior bearing walls indicated that the capacity of those mini-piles was "to be 8000 pounds; unfactored load, plus 3.0 safety factor."

-2-

would not affect the items in the room or the underground utilities. The proposed work was a precautionary measure in case the soils should settle.

We cannot conclude that the trial court abused its discretion in allowing Whitaker to testify as a lay witness about matters within his personal knowledge. *Id.* Plaintiff makes no argument that Whitaker's testimony about the plan to render the floor of the mechanical room irrelevant should the soils underneath the room settle was improper lay testimony.

Plaintiff also argues that the trial court erred in not prohibiting Robert Littke, defendant's president and CEO, from giving testimony that described settlement. The trial court held that Littke could testify about what he personally observed and what he personally believed to be settlement. We review a trial court's evidentiary decisions for an abuse of discretion. *Id.*

Plaintiff does not identify the specific testimony of Littke that it believes the trial court should have precluded. We assume that plaintiff is challenging Littke's testimony about the condition of the mechanical room. Littke testified that he was familiar with the condition of the mechanical room in 2007 after plaintiff and Miller Davis Company, the company that did the repair finishes, completed their work. According to Littke, pictures of the mechanical room shown to him did not represent the condition of the mechanical room in 2007 after Miller Davis Company finished its work. The pictures showed gaps underneath the baseboards and stretched wallpaper near a doorframe. Neither of these conditions, Littke testified, existed after Miller Davis Company finished its work. Littke explained that he had prepared a punch list for Miller Davis Company and that he would have identified both of these conditions in 2007, listed them on the punch list, and had Miller Davis Company correct them. Additionally, Littke testified that the door to the mechanical room sticks in its frame, which it did not do in 2007. He explained that the door, had it been sticking in the frame, would have been placed on the punch list.

Littke's testimony about the condition of the mechanical room was not complicated, and there is no claim that Littke testified about a matter for which he did not have personal knowledge. See MRE 601. Littke testified that, based on his conduct and observations in 2007, the pictures of the mechanical room did not represent the condition of the room after Miller Davis Company finished its work in 2007. Spartan Services does not cite any authority that prohibits a lay witness from testifying that a picture of a room does not accurately portray the condition of the room at a previous time. Accordingly, we reject plaintiff's argument that the trial court erred in denying its motion to limit the testimony of Littke.

Next, plaintiff argues that the trial court erred in denying its motion for summary disposition. According to plaintiff, if there was no genuine issue of material fact that the mini-piles were installed in accordance with the specifications, then it was entitled to judgment that it did not breach the contract. It was undisputed that plaintiff did not use grout bulbs and did not drive all the mini-piles to a minimum depth of 25 feet. Thus, plaintiff only complied with the contract if the contract did not require it to use grout bulbs and to drive the mini-piles to a minimum depth of 25 feet. Plaintiff makes no argument that the language of the contract, when the contract is read as a whole, *Detroit Pub Sch v Conn*, 308 Mich App 234, 373; 863 NW2d 373 (2014), is unambiguous and that the only mandatory requirement regarding the installation of the mini-piles was that the mini-piles met capacity. Accordingly, plaintiff has abandoned its claim

that the trial court erred in denying its motion for summary disposition, see *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003), and we decline to address it.

Plaintiff argues that the trial court erred in denying its motion for JNOV. We review a trial court's decision on a motion for JNOV de novo. *Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012). We view the testimony and all legitimate inferences in a light most favorable to the nonmoving party. *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 260; 617 NW2d 777 (2002). If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand. *Id.* at 260-261.

Plaintiff asserts that it was entitled to JNOV because it did not breach the contract and defendant failed to pay for its performance. The basis for plaintiff's argument is that the mini-piles met capacity and that it was not required to use grout bulbs and to drive the mini-piles to a minimum depth of 25 feet. "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

The specifications in the drawings for the mini-piles stated that the capacity for the mini-piles was "to be" 6,000 or 8,000 pounds and that the length of the mini-piles was "to be" adequate to get into undisturbed soil to a depth adequate for obtaining the required capacity. The specifications in the project manual stated that the mini-piles "should" have a capacity of 4 tons and 3 tons, that the mini-piles "should" be driven to minimum depth of 25 feet, and that a grout bulb "should" be formed at the base of a mini-pile. Kenneth Winters, an expert in structural engineering, and Richard Anderson, an expert in geotechnical engineering, agreed with Steve Maranowski, plaintiff's president, that the specifications in the project manual, because those specifications used the word "should," were permissive and suggestions of what plaintiff could do to achieve the required capacity. However, the trial court, when it instructed the jury on how to interpret the contract, instructed the jury that it was to interpret the words of the contract by giving them their ordinary and common meaning. An ordinary and common meaning of the word "should" is that it denotes a mandatory obligation. See *People v Fosnaugh*, 248 Mich App 444, 455; 639 NW2d 587 (2001) (stating that "the word 'should' can, in certain contexts, connote an obligatory effect"); *Merriam-Webster's College Dictionary* (11th ed) (defining "should," in pertinent part, as "used in auxiliary function to express obligation, propriety, or expediency").[2] Accordingly, viewing the evidence in a light most favorable to defendant, reasonable jurors could have honestly reached different conclusions on whether the specifications in the project manual were mandatory and, because Maranowski admitted that plaintiff did not use grout bulbs and did not drive all the mini-piles at least 25 feet into the ground, whether plaintiff breached the contract. *Morinelli*, 242 Mich App at 260-261.

Additionally, Winters and Anderson admitted that the two sets of specifications could be viewed as inconsistent. Under the project manual, when there was an inconsistency, "the better

---

[2] We note that defendant, in its closing argument, argued that the word "should" can be seen as "prohibitive or as mandatory in many contexts."

quality or greater quality of Work shall be provided in accordance with the Architect's interpretation." Similarly, under another contract document, TMP Architecture, the architect for the "major repair," was to "interpret and decide matters concerning performance under and requirements of the Contract Documents." The dispute between plaintiff and defendant regarding the use of grout bulbs was submitted to TMP Architecture. TMP Architecture viewed the specification regarding the use of grout bulbs as a mandatory requirement. In the project memo it issued, TMP Architecture wrote that the "deviation" of plaintiff from specification 3.15 was done with no documentation of change from it or Robert Darvas Associates, a structural engineering firm that was used by TMP Architecture. It also wrote that if the "deviation" was acceptable to Robert Darvas Associates, "the documents should be amended from the specification requirement to that of a performance type of spec and the piles should be individually tested to prove that performance is met." It further wrote, "Once the documents were drafted and Spartan was contracted for the work as specified, the Owner, architect and engineer have the expectation of the work being done in strict accord with those documents. It is not in the purview of Spartan to any longer deviate from those set specs." TMP Architecture gave two choices: (1) plaintiff could continue with work "as specified with bulb being installed" or (2) Robert Darvas Associates could suggest to TMP Architecture and defendant that the requirement be changed to a performance specification, with plaintiff making the final decision.

Under the contract documents, changes in the work could only be accomplished through change orders. Littke testified that no change orders were ever requested. Because TMP Architecture interpreted the specification regarding the use of grout bulbs as a mandatory requirement, and because plaintiff did not submit a change order regarding the specification, reasonable jurors could have honestly reached different conclusions whether plaintiff, by not using grout bulbs, breached the contract. *Morinelli*, 242 Mich App at 260-261.

Additionally, even if plaintiff did not breach the contract by not using grout bulbs and by not driving the mini-piles to a minimum depth of 25 feet, reasonable jurors could have honestly reached different conclusions on whether plaintiff was entitled to payment from defendant. The trial court provided the following instruction to the jury:

> Senior Services claims that Spartan Specialties and it agreed that Senior Services did not have to perform its part of the contract unless Spartan Specialties posted a performance bond, had the architect certify all pay application requests and submitted waivers of lien so in order to qualify for final payment. These requirements are called conditions precedent. A condition precedent is a fact or event that the parties intended must take place before the other has to perform. Spartan Specialties denies that these conditions were part of the contract. Whether a provision in a contract is a condition precedent which excuses performance depends on the intent of the parties. The parties' intent is to be ascertained from a fair and reasonable construction of the language used in light of the surrounding circumstances when they executed the contract. If you find that the conditions precedent were part of the contract you must decide whether the required event occurred. If you decide that the condition or event did not

occur then Senior Services is not required to perform its part of the contract. Senior Services has the burden of proof that the required condition did not occur.[3]

Pertinent provisions in the contract documents regarding the alleged conditions precedent included the following: (1) "Based on Contractor's Applications for Payment certified by the Architect, the Owner shall pay the Contractor . . . monthly with ten percent (10%) retainage;" (2) "Contractor shall deliver to Owner with request for payment sworn statements and waivers of lien satisfactory to Owner;" (3) "Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor;" (4) "The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part;" and (5) "Accepted bidders may be required to furnish satisfactory performance bond." Littke testified that plaintiff was required to post a performance bond.

Littke testified, as did Maranowski, that plaintiff did not post a performance bond. Littke also testified, as did Maranowski, that plaintiff did not provide any lien waivers in connection with its second application for payment. Additionally, it was undisputed that TMP Architecture did not certify plaintiff's second application for payment. Viewing the evidence in a light most favorable to defendant, reasonable jurors could have honestly reached different conclusions whether the performance bond, certification of payment application requests, and submission of lien waivers were part of the contract between plaintiff and defendant and whether these preconditions were met. *Morinelli*, 242 Mich App at 260-261. Consequently, reasonable jurors could have reached honestly different conclusions whether defendant's obligation to pay plaintiff was triggered. *Id.* We affirm the trial court's denial of plaintiff's motion for JNOV.

Plaintiff also argues that the trial court erred in denying its motion for a new trial. We review a trial court's decision on a motion for a new trial for an abuse of discretion. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817 (2014). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.*

Plaintiff claims that it is entitled to a new trial because the verdict was clearly or grossly inadequate. See MCR 2.611(A)(1)(d). "A verdict should not be set aside simply because the method of computation used by the jury in assessing damages cannot be determined, unless it is not within the range of evidence presented at trial." *Diamond v Witherspoon*, 265 Mich App 673, 694; 696 NW2 770 (2005). Plaintiff also claims that it is entitled to a new trial because the

---

[3] See *Reed v Citizens Ins Co of America*, 198 Mich App 443, 447; 499 NW2d 22 (1993), overruled in part on other grounds by *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521 (2005) ("A 'condition precedent' is a fact or event that the parties intend must take place before there is a right to performance."). On appeal, plaintiff makes no argument concerning the propriety of this instruction.

verdict was against the great weight of the evidence. See MCR 2.611(A)(1)(e). A verdict should not be set aside if there is competent evidence to support it. *Dawe v Dr Reuven Bar-Levav & Assoc, PC (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010).

The ultimate basis for plaintiff's claim for relief under MCR 2.611 is that the evidence established that plaintiff, by not using grout bulbs and by not driving the mini-piles to a minimum depth of 25 feet, did not breach the contract and that defendant, by not paying plaintiff, breached the contract. However, as previously explained, there was evidence from which the jury could have found that plaintiff breached the contract when it did not use grout bulbs and did not drive all the mini-piles 25 feet into the ground. There was also evidence from which the jury could have found that, even if plaintiff did not breach the contract, defendant's obligation to pay plaintiff was not triggered and, therefore, defendant did not breach the contract when it failed to pay plaintiff.[4] Accordingly, the trial court did not abuse its discretion in denying plaintiff's motion for a new trial. *Rental Props Owners Ass'n of Kent Co*, 308 Mich App at 531.

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering

---

[4] Additionally, there was evidence from which the jury could have found that, if plaintiff breached the contract, defendant was damaged by the breach. Anderson testified that when he visited the mechanical room in July 2014 he saw evidence of settlement, including cracked tiles, although he believed that the evidence of settlement existed before plaintiff did any work in 2007. But Littke and Nick Sawyer, an employee of Miller Davis Company, when shown pictures of the mechanical room, testified that the pictures did not represent the condition of the room in 2007 after Miller Davis Company finished its work. Specifically, Littke indicated that in 2007 there were no gaps between the baseboards and the floor, while Sawyer indicated that there had been no cracked tiles or gaps under the baseboards.