# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH PATTEN,

Plaintiff-Appellee,

v

CITY OF ANN ARBOR and ANN ARBOR
POLICE DEPARTMENT,

Defendants-Appellants.

UNPUBLISHED
January 11, 2018

No. 335021
Washtenaw Circuit Court
LC No. 15-000771-CD

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendants appeal by leave granted[1] the trial court's denial of their motion for summary disposition of plaintiff's sex discrimination and retaliation claims. Plaintiff claimed that defendants violated the Elliot-Larsen Civil Rights Act and Title VII of the Civil Rights Act of 1964 by discriminating against her on the basis of her sex when it made several decisions regarding her employment status. She also claimed that defendants retaliated against her for complaining that defendants' promotion process inherently favored males and discriminated against females. Defendants argue that the trial court erred because plaintiff failed to establish her prima facie cases of sex discrimination and retaliation and even if she had she failed to rebut their legitimate, nondiscriminatory reasons for their decisions. We reverse the trial court's denial of defendant's motion and remand for entry of an order of summary disposition favoring defendants on both the sex-discrimination and retaliation claims.

## I. BACKGROUND

Plaintiff began serving as an Ann Arbor Police Department (AAPD) patrol officer in 1996. During the fall of 2011, plaintiff applied for one of six posted sergeant positions and took the written and oral examinations administered by an outside company with whom the AAPD contracted to rank candidates for the posted positions. The oral exam consisted of candidate interviews by three- to four-person panels, selected and trained by the outside company. After

---

[1] *Patten v Ann Arbor*, unpublished order of the Court of Appeals, entered February 16, 2017 (Docket No. 335021).

-1-

the interviews, the police chief met with the panelists to discuss the candidates. The outside company ranked the candidates based on their test scores and presented its rankings to the chief who had final decision-making authority.

The AAPD completed the selection process in early 2012. Plaintiff placed sixth overall among nine candidates. The AAPD promoted three candidates to sergeant positions, but the remaining position were not filled. Plaintiff complained to Lieutenant Matthew Lige regarding the selection process. Police Chief John Seto became aware of plaintiff's complaint and directed Deputy Chief Greg Bazick to advise the AAPD's Human Resources Department (HR) about the complaint. Robyn Wilkerson of HR conducted a formal investigation.

Among other things, plaintiff complained that the sergeant promotion process used by the AAPD had inherent gender bias and favored male candidates because the majority of the panelists were men. She also complained that the AAPD credited candidates for military service, which put her at a disadvantage because she was lesbian and could not serve in the military. Plaintiff believed that the chief should have used gender as a determinative factor in favor of females to make the sergeant ranks more diverse. Because the chief did not do so, plaintiff believed he displayed gender bias. Plaintiff, however, admitted that she had no factual information that the chief possessed bias or animus against females.

Chief Seto met with plaintiff regarding promoting officers to sergeant positions and responded to her questions about why all posted sergeant positions had not been filled. Chief Soto testified that during 2012, when he became chief, the AAPD faced many challenges in staffing all of its ranks. A shortage of patrol officers existed that the department had not filled and had difficulty filling. Several vacant command positions were not filled because Chief Seto wanted to make sure that AAPD had enough subordinate road patrol officers. After the investigation, defendants determined that plaintiff's complaint was unfounded.

During 2012, plaintiff sought a school-liaison position. She and three male candidates applied for the position. Chief Seto selected plaintiff for the position but later the public school district eliminated the position. Plaintiff admitted that nothing discriminatory occurred in relation to the position elimination. She testified that she was not targeted because of gender or retaliation. After the position was eliminated, plaintiff returned to traffic and then patrol.

During 2013, the AAPD conducted a second round of sergeant promotions for which 12 candidates including plaintiff applied. The AAPD conducted the promotion process in its usual manner, with the outside company administering and scoring the tests. Plaintiff testified that she learned that the scenarios for the oral exam were provided to the panelists by two AAPD deputy chiefs and one AAPD lieutenant. Some scenarios were similar to incidents that occurred within the AAPD in which some candidates were involved. Plaintiff felt that having such scenarios gave certain candidates an inside track and knowledge. Plaintiff speculated that the AAPD used such scenarios to favor white male candidates for the oral exams. She believed that the two deputy chiefs and the lieutenant infected the 2013 sergeant selection process to discriminate against women because they offered the scenarios to the external panelists. Plaintiff, however, never made any complaint or filed a grievance about the process.

Chief Seto promoted plaintiff to sergeant because she ranked second overall after testing. Chief Seto used the "Rule of Three," that the Ann Arbor Police Officers Association (AAPOA) and defendants approved. Under the Rule of Three, the chief had discretion to pick from the top three candidates to fill posted positions.

New sergeants received an orientation and training. They were required to serve a six-month probation period during which they received training and were required to perform successfully skills expected of sergeants. Lieutenant Paul Curtis testified that, as a sergeant, he trained plaintiff when she was first promoted to sergeant. He took plaintiff out on patrol to show her how he operated as a patrol sergeant. He also spoke with her in his office to impart his knowledge how to perform properly as a sergeant. Plaintiff received a performance evaluation during July 2013 that covered January 5, 2013, through May 4, 2013. Plaintiff met expectations during that period.

On June 21, 2013—still within plaintiff's original probationary period—plaintiff received a personnel complaint (PC) that resulted in discipline. PC 13-023 involved an incident in which plaintiff mistakenly discharged her Taser while handcuffing a suspect who had surrendered. The AAPD investigated the incident and interviewed plaintiff, who could not explain what caused her Taser to deploy. She told the investigators that she did not remember having her finger on its trigger. The investigation also established that, after she handcuffed the suspect, several backup units responded and processed the scene. While still at the scene, plaintiff turned off her audio recording to talk to a subordinate officer who inquired about what happened. Plaintiff asked the officer if her recording system was turned on. The officer turned her recording system off. Plaintiff testified that she felt a little stupid for deploying her Taser and did not want to explain that on tape.

Chief Seto drafted the PC 13-023 disposition memo. He found plaintiff's actions justified up until she discharged her Taser. Chief Seto concluded that plaintiff inappropriately discharged her Taser because the suspect had surrendered and complied with plaintiff. No injuries resulted from plaintiff's Taser deployment, but Chief Seto viewed it as a "serious mistake in deployment of force that could have resulted in significant injury." Chief Seto also expressed concern because the investigation determined that plaintiff turned off her recording system while still at the scene. Chief Seto testified that although an officer may turn off the recording system when speaking with another officer about personal matters, while officers remain at a scene, the incident remained an enforcement activity or an ongoing investigation so officers were required to keep their recording systems operating. Consequently, he found plaintiff's conduct at the scene improper and noted that in PC 13-023.

Lieutenant Curtis sent Deputy Chief James Baird a memo on August 21, 2013, regarding plaintiff's sergeant probationary status that evaluated plaintiff's performance to-date. Lieutenant Curtis made a number of complimentary remarks about plaintiff in his memo. He also identified deficiencies in plaintiff's performance and stated that she lacked confidence in herself as a sergeant and made remarks to others that undermined her position as a command officer. Lieutenant Curtis stated that he believed plaintiff could succeed as a sergeant, but he could not recommend her advancement to full-fledged sergeant status at that time. Consequently, he recommended that her probation be extended so that she could receive additional training.

Deputy Chief Baird wrote Chief Seto a memo recommending extending plaintiff's probationary status. Chief Seto thereafter informed plaintiff that her six-month sergeant probation period would be extended for an additional six months. He informed plaintiff that Deputy Chief Baird would coordinate providing her additional training and coaching to assist her successful completion of her probationary status.

Plaintiff also received PC 13-046 during her probation period for an incident that occurred on October 6, 2013, regarding the way she handled a suspect arrested for drunk driving. The suspect indicated that she needed to use the restroom and plaintiff sent her into the prisoner shower room that had no toilet. The suspect urinated on the floor and came out wet from the shower. Plaintiff laughed at the suspect and did not give her a towel to dry herself. Other officers witnessed the incident. Chief Seto drafted the PC 13-046 disposition memo based on information provided to him after Lieutenant Lige concluded his investigation of the incident. Chief Seto also reviewed a videotape of the incident.

Plaintiff testified that she felt that Lieutenant Curtis and Deputy Chief Baird held her accountable for things differently than male officers. Plaintiff testified that Deputy Chief Baird held her to a different standard in retaliation for the complaint she made in November 2012 regarding that year's sergeant-selection process. Further, plaintiff asserted that Deputy Chief Baird discriminated against her because her male counterparts did the same things she did without any repercussions. Plaintiff, however, did not provide examples that provided a basis for comparison.

When asked to describe the facts that plaintiff relied upon to tie her November 2012 complaint to Deputy Chief Baird's recommendation to extend her probation, plaintiff testified that she felt he treated her differently than male officers who made the same mistakes. She failed to identify any specific factual bases for her belief that Lieutenant Curtis and Deputy Chief Baird discriminated against her on the basis of sex or retaliated against her. Plaintiff admitted that the final decision regarding her probation status rested with Chief Seto. She admitted that she had no facts of any direct statements by Chief Seto that indicated that he retaliated against her. She also admitted that she had no personal information or facts that his decision had anything to do with the fact that she was female. Plaintiff admitted that Chief Seto never said any discriminatory comments to her and that she never observed anything that indicated he had a retaliatory motive against her. She just concluded that he must have harbored such motives because he extended her probation.

Plaintiff's next performance evaluation occurred during November 2013. Lieutenant Curtis performed the review and authored the written evaluation. Lieutenant Curtis prepared a memo on November 20, 2013, in conjunction with his review of plaintiff during her extended probationary period. He reported numerous deficiencies in plaintiff's performance. He recommended to Deputy Chief Baird and Chief Seto that plaintiff be returned to the rank of patrol officer. Among the deficiencies that Lieutenant Curtis reported, he noted plaintiff's failure to submit adequately and timely her evaluations of subordinate officers. He also described an incident involving an arrest following a traffic stop in which plaintiff searched a suspect but had not removed cocaine from that suspect. He expressed serious concern about the Taser incident that led to PC 13-023, and he described other incidents that revealed that sergeants and subordinate officers lacked trust in plaintiff's leadership and decision-making abilities.

Deputy Chief Baird testified that after he reviewed Lieutenant Curtis's memo, plaintiff's performance evaluations, and the PCs that she received during her probationary period, he wrote a memo to Chief Seto that recommended that plaintiff be returned to officer rank.

On December 2, 2013, Chief Seto met with plaintiff to present her his disposition of PC 13-046. An HR representative also attended the meeting. Chief Seto advised plaintiff that he intended to review her status as a probationary sergeant and perform a full review process that included getting recommendations from Lieutenant Curtis and Deputy Chief Baird, and then evaluate all of the information before making his decision regarding her probationary status. Regarding PC 13-046, plaintiff received a written warning for her conduct but did not lose any pay or benefits.

After the December 2, 2013, meeting, plaintiff continued working as a probationary sergeant. Meanwhile, Chief Seto reviewed Lieutenant Curtis's November 20, 2013 memo, PC 13-023, PC 13-046, plaintiff's recent performance evaluation, and Deputy Chief Baird's evaluation. Chief Seto decided to terminate plaintiff's probationary status and return her to the rank of patrol officer. On December 13, 2013, Chief Seto and an HR representative met with plaintiff and informed her of Chief Seto's decision.

Chief Seto met again with plaintiff on January 13, 2014. During the meeting, Chief Seto gave plaintiff the opportunity to step down voluntarily from her sergeant position in lieu of his official determination ending her probationary status. Plaintiff accepted that offer and notified Chief Seto of her desire to decline her sergeant promotion and return to the rank of officer. On January 17, 2014, Chief Seto sent a memo to all AAPD personnel informing them that plaintiff declined her sergeant promotion.

After she returned to the patrol rank, plaintiff had an accident that caused damage to her patrol car that resulted in the issuance of PC 14-010 and PC 14-011. The incident occurred on March 3, 2014. Plaintiff pulled into a parking space off an alley and struck a brick wall. She reversed and exited her vehicle to examine the car. Plaintiff found damage to the front bumper, contacted command, and reported that she found damage on her car. She reported that the car was not damaged at the start of her shift and gave three alternate explanations for the damage. Plaintiff told the sergeant that the damage may have occurred when she parked the car, when she hit a snow bank earlier, or when the car was parked and unoccupied. She testified that she lacked certainty about how the damage happened and only learned later that it resulted from hitting the brick wall after she reviewed her in-car video.

Plaintiff's sergeants investigated the collision incident. PC 14-011 was issued in relation to the crash and resulted in a verbal warning. PC 14-010 involved investigation of plaintiff's honesty regarding how she reported the incident to command. Plaintiff denied that she concealed anything about the crash into the brick wall. Plaintiff admitted telling one of her sergeants that, because she had three PCs in one year, if she had another PC she was going to get in serious trouble. Consequently, she requested informal reporting of the incident. Plaintiff admitted that when she met with her sergeant and examined the damage, she asked if he could handle the incident informally because she could not afford another write-up. Following the conclusion of the PC 14-010 investigation, plaintiff received a three-week unpaid suspension. In response, she filed a grievance.

-5-

Plaintiff testified during her deposition that she had no memory of how the damage to her patrol car occurred because she had a migraine condition that caused her to suffer memory loss. Despite the memory loss, however, plaintiff recounted that she remembered that she experienced an episode of vertigo just before she hit the wall. She remembered that she felt the jar of impact, got out of the car, and found damage to it, but she saw nothing on the wall.

Around March 25, 2014, plaintiff took medical leave related to migraines. She was cleared to return to work on May 30, 2014, and notified the AAPD. She served her three-week suspension at the end of her medical leave. On July 23, 2014, HR notified plaintiff that it denied her grievance appeal. Shortly thereafter, the AAPOA informed plaintiff that it would not take plaintiff's grievance to arbitration because of lack of merit.

On September 15, 2014, Deputy Chief Baird sent a memo to plaintiff that informed her that she failed to meet the qualifications for Senior Officer II because of her performance evaluations. Consequently, plaintiff was temporarily demoted to Senior Officer I and received a commensurate decrease in her pay. The demotion was automatically triggered by the collective bargaining agreement because plaintiff's performance evaluations failed to meet certain standards. Plaintiff eventually regained Senior Officer II status. Plaintiff claimed that the demotion occurred because of discrimination and retaliation. Plaintiff, however, testified that other officers received the same demotion at the same time because of their performance evaluations.

Plaintiff worked a light-duty assignment at the front desk in 2014. She requested the assignment because of a migraine-related medical condition. Under the AAPOA collective bargaining agreement, light-duty assignments could last no longer than nine months. During March 2015, plaintiff's light-duty assignment ended. Plaintiff requested an extension of her light-duty assignment, but the request was denied based upon the terms of the AAPOA collective bargaining agreement.

Plaintiff claimed that she was denied an extension based on defendants' discrimination and retaliation against her. She believed that in the past a previous police chief allowed male officers extended light-duty assignments despite the terms of the collective bargaining agreement, but admitted that she did not know the circumstances under which the extensions were granted or who made the decisions. Because the AAPOA's collective bargaining agreement did not protect plaintiff's job if she failed to have medical clearance at the end of the nine-month light-duty assignment period, she took time off under the Family Medical Leave Act, 29 USC 2601 *et seq*.

Eventually, plaintiff was medically cleared for work and returned to full duty. Plaintiff now works as a road patrol officer. Plaintiff has received no formal reprimands since returning from leave, but has received nondisciplinary counseling on two occasions—once for using a cell phone while transferring prisoners and once for an incident where plaintiff accidentally became locked in a prison cell while searching a prisoner.

Plaintiff sued defendants and, after extensive discovery, defendants moved for summary disposition under MCR 2.116(C)(10) on the grounds that plaintiff failed to establish the existence of any direct or circumstantial evidence of sex discrimination and that they had

legitimate, nondiscriminatory reasons for their adverse employment decisions affecting plaintiff. Defendants also argued that plaintiff failed to establish any evidentiary basis for her claim that defendants retaliated against her in their employment decisions because she complained about sex discrimination. The trial court disagreed and denied defendants' motion, holding that plaintiff established her prima facie case of discrimination and that an inference could be drawn from the facts that defendants' adverse employment decisions may have resulted from discrimination.

Defendants now appeal.

## II. ANALYSIS

We review de novo a trial court's decision on a motion for summary disposition. *Diamond v Witherspoon*, 265 Mich App 673, 680; 696 NW2d 770 (2005). A motion under MCR 2.116(C)(10) tests the factual support for claims. The trial court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. at 681. A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) if the proffered evidence shows that no genuine issue in respect to any material fact exists and the moving party is entitled to judgment as a matter of law. *Id*. A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). We consider only the evidence that was properly presented to the trial court in deciding the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310, 660 NW2d 351 (2003).

*Defendants Were Entitled to Summary Disposition on Plaitniff's Sex-Discrimination Claim.* Defendants argue that the trial court erred because plaintiff failed to establish her prima facie cases of sex discrimination and retaliation and because the trial court failed to shift the burden back to plaintiff to prove with admissible evidence that defendants' legitimate, nondiscriminatory reasons for their employment decisions were a pretext for sex discrimination. Because we agree that, even assuming plaintiff established a prima facie case of discrimination, plaintiff failed to rebut defendants' evidence of legitimate non-discriminatory reasons, we reverse the trial court's denial of defendants' motion for summary disposition on plaintiff's sex-discrimination claim.

The Elliot-Larsen Civil Rights Act (ELCRA) provides that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . or marital status." MCL 37.2202(1)(a). Thus, "it is unlawful for employers to discriminate against an individual with respect to a condition of employment because of sex." *Haynie v State*, 468 Mich 302, 307; 664 NW2d 129 (2003).

"Proof of discriminatory treatment in violation of the [ELCRA] may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 132; 666 NW2d 186 (2003). In a case where direct evidence is lacking, a plaintiff must prove by a preponderance of the evidence a rebuttable prima facie case of prohibited discrimination under the test defined in *McDonnell Douglas Corp v Green*, 411 US

792; 93 S Ct 1817; 36 L Ed 2d 688 (1973). See *Lytle v Malady (On Rehearing)*, 458 Mich 153, 172-173; 579 NW2d 906 (1998). Under, the *McDonnell Douglas* test a plaintiff sets forth a prima facie case of discrimination by showing that (1) plaintiff was a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for the employment position; and (4) the action taken by defendants gave rise to an inference of unlawful discrimination. *Hazle v Ford Motor Co*, 464 Mich 456, 463; 628 NW2d 515 (2001). To establish the fourth element of the test, plaintiff must present evidence that defendants treated plaintiff differently than males for the same or similar conduct. *Id*. at 468.

If a plaintiff establishes a prima facie case of discrimination based on sex, then the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action taken. *Hazle*, 464 Mich at 464. If defendants articulate a legitimate, nondiscriminatory reason for the adverse employment action, then the burden shifts back to the plaintiff to present evidence that the explanation provided by her employer constituted a mere pretext for discrimination. *Id*. at 465-466.

A plaintiff can establish pretext by showing (1) the articulated reasons had no basis in fact; (2) if they have a basis in fact, the articulated reasons were not the actual factors motivating the decision; or (3) if they were factors, the articulated reasons were jointly insufficient to justify the decision. In *Lytle*, 458 Mich at 175-176, the Michigan Supreme Court further clarified what a plaintiff must show to establish pretext:

> Under this position, disproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action. In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for age or sex discrimination. Therefore, we find that, in the context of summary disposition, a plaintiff must prove discrimination with admissible evidence, either direct or circumstantial, sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.

In this case, review de novo of the trial court record establishes that no direct evidence of sex discrimination existed. Therefore, plaintiff had to establish with admissible evidence proof of her prima facie case of discrimination. For purposes of this analysis, we will presume that plaintiff established a prima facie case of sex discrimination.

Plaintiff claimed that several of defendants' employment decisions discriminated against her because of her sex, including: (a) defendants' refusal to promote her to sergeant in 2012; (b) defendants' extension of her sergeant probationary status; (c) defendants' demotion of her from sergeant to patrol officer; (d) defendants' temporary demotion of her from Senior Officer II to Senior Officer I for her performance; (e) defendants' disciplining of her in relation to her patrol car crash and reporting of the incident; and (f) defendants' denial of her request for extension of her light duty assignment.

Even assuming that plaintiff proved her prima facie case of sex discrimination, the trial court record establishes that, for each adverse employment decision that defendants made, defendants provided admissible evidence of their legitimate, nondiscriminatory reasons for their decisions. Consequently, the burden shifts back to plaintiff to rebut defendants' reasons.

Respecting Chief Seto's decision regarding sergeant promotions in 2012, defendant explained that only three positions were filled because of a need for patrol officers. Plaintiff was sixth on the list and was not promoted because of that. Plaintiff proffered no evidence that rebutted defendants' legitimate, nondiscriminatory reason for doing so.

Documentary and testimonial evidence also supported defendants' reasons for their extension of plaintiff's sergeant probation period. Plaintiff admitted that she committed the conduct defendants relied upon for their employment decisions but quibbled with the seriousness with which they took that conduct. Plaintiff's conclusion that the probation extension resulted from defendants' discriminatory animus lacks any evidentiary support.

Defendants also established legitimate, nondiscriminatory reasons for plaintiff's demotion from sergeant to patrol officer. In response, plaintiff again quibbled with defendants' assessment of her performance and offered in conclusory fashion that defendants discriminated against her. She excused her conduct as mere common mistakes. In essence, to support her discrimination claim, she offered her personal assessment of her performance and jumped to the conclusion that her superior officers' assessment must have resulted from sex discrimination. Plaintiff's personal feeling that defendants' decision was based on her sex is not the type of evidentiary support necessary to rebut defendants' evidence of nondiscrimination and create a material issue of fact for the jury's determination.

We also find that defendants established legitimate, nondiscriminatory reasons for their decisions to demote temporarily plaintiff from Senior Officer II to Senior Officer I and discipline her with a suspension in relation to her patrol car crash and reporting of the incident. Defendants explained that, based upon plaintiff's deficient performance, the AAPOA collective bargaining agreement required a temporary demotion from Senior Officer II to Senior Officer I. That other officers not within a protected class were also demoted for their deficient performance at the same time as plaintiff supports defendants' argument that plaintiff's demotion was mandatory under the collective bargaining agreement. Plaintiff proffered no evidence to the contrary. In the absence of admissible evidence, reasonable triers of fact could not conclude that discrimination was a motivating factor for these adverse actions taken by defendants.

Review de novo of the record also establishes that defendants provided a legitimate, nondiscriminatory reason for their decisions not to extend plaintiff's light-duty assignment. The AAPOA collective bargaining agreement provided plaintiff only a nine-month period of light-duty assignment. Chief Seto explained that, during his administration, he adhered to the terms of the AAPOA collective bargaining agreement and never granted any extension beyond nine months. Plaintiff's attempt to rebut defendants' reasons with the AAPD's previous administration's extensions of light-duty assignments to some male officers fails because she proffered no evidence regarding any similarities between her situation, medical condition, and needs and those of the officers who previously obtained extensions. Moreover, plaintiff proffered no evidence from which a rational trier of fact could conclude that Chief Seto's

adherence to the collective bargaining agreement would have been relaxed for a similarly situated male officer. She relied exclusively on conjecture and simply concluded that sex discrimination served as the basis for defendants' decision.

The trial court erred by not shifting the burden back to plaintiff to prove that defendants' legitimate, nondiscriminatory reasons were a mere pretext for sex discrimination. Review de novo of the record establishes that plaintiff failed to show that defendants' reasons had no basis in fact, that plaintiff proffered no evidence to show that defendants' reasons were not the actual factors motivating their decisions, and that plaintiff failed to show that defendants' reasons lacked sufficiency to justify their decisions. Plaintiff failed to rebut defendants' legitimate, nondiscriminatory reasons for itheir adverse employment decisions, and the trial court simply substituted its speculation regarding defendants' motives to infer that sex discrimination motivated defendants' decisions. Accordingly, defendants were entitled to summary disposition on plaintiff's claim of sex discrimination.

*Defendants Were Entitled to Summary Disposition on Plaintiff's Claim of Retaliation.* Before the trial court, plaintiff also argued that defendants discriminated against her in retaliation for her formal and informal complaints of sex discrimination. Because plaintiff did not establish a prima facie case of retaliation, defendants were entitled to summary disposition on her claim.

The ELCRA also prohibits employers from retaliating against employees who complain about sex discrimination. MCL 37.2701(a) provides that an employer shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge [or] filed a complaint . . . under this act." To establish a prima facie case of unlawful retaliation under the ELCRA, plaintiff must show: (1) that she engaged in a protected activity; (2) that defendant knew she engaged in a protected activity; (3) that defendant took an employment action adverse to plaintiff; and (4) that a causal connection existed between plaintiff's protected activity and the adverse employment action. *Garg v Macomb Mental Health*, 472 Mich 263, 273; 696 NW2d 646 (2005).

In this case, plaintiff established the first three elements of her prima facie case of retaliation. Review de novo of the record, however, establishes that plaintiff failed to show with admissible evidence that a causal connection existed between her sex discrimination complaint and any of defendants' adverse-employment decisions.

To establish causation, plaintiff must show that her participation in protected activity served as "a significant factor in defendants' adverse employment actions, not just that there was a causal link between the two." *Barret v Kirtland Community College*, 245 Mich 306, 315; 628 NW2d 63 (2001) (internal citation and quotation marks omitted). Proof of causation requires more than conjecture or speculation to connect the protected activity and defendants' decisions. *Shaw v Ecorse*, 283 Mich App 1, 14-15; 770 NW2d 31 (2009). The evidence must suffice to prove that retaliation motivated defendants' actions. *Id*. at 15.

Although plaintiff testified that she believed that defendants retaliated against her, she proffered no objective admissible evidence supporting her belief. Review de novo of the record establishes that no evidence linked plaintiff's protected activity to defendants' adverse employment actions. Moreover, even if plaintiff had made out her prima facie case of

retaliation, plaintiff's performance record, which included multiple concerns by several officers regarding plaintiff's ability to fulfill the duties assigned her in various positions, provides a legitimate, non-discriminatory reason for defendants' employment decisions, which plaintiff has offered no evidence to rebut. Accordingly, the trial court erred by not granting defendants summary disposition of plaintiff's retaliation claim.

## III. CONCLUSION

Assuming plaintiff established a prima facie case of sex-discrimination, plaintiff failed to provide evidence rebutting defendants' legitimate nondiscriminatory reasons for the adverse employment decisions. Similarly, plaintiff failed to show a causal link between any adverse action and any protected activity, and therefore cannot make a claim of retaliation. Accordingly, we reverse the trial court's denial of defendants' motion for summary disposition and remand for entry of summary disposition in favor of defendants and further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle