*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK MCHENRY,

       Plaintiff-Appellee,

and

MICHIGAN PAIN MANAGEMENT, COMPLETE IMAGING, and SOUTHEAST MICHIGAN SURGICAL HOSPITAL, LLC,

       Plaintiffs,

v

FARM BUREAU GENERAL INSURANCE COMPANY OF MICHIGAN, also known as FARM BUREAU MUTUAL INSURANCE COMPANY OF MICHIGAN,

       Defendant-Appellant.

UNPUBLISHED
May 23, 2024

Nos. 362288; 363936
Wayne Circuit Court
LC No. 19-009546-NF

Before: FEENEY, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

In these consolidated appeals, Dockets Nos. 362288 and 363936,[1] defendant, Farm Bureau General Insurance Company of Michigan, appeals as of right the judgment for plaintiff Mark McHenry and the trial court's postjudgment order awarding McHenry attorney fees as a case evaluation sanction. For the reasons stated in this opinion, we reverse the court's decision to award attorney fees as case evaluation sanctions and reverse the award of penalty-interest on the wage-loss claim, but we affirm in all other respects.

---

[1] *McHenry v Farm Bureau Gen Ins Co of Mich*, unpublished order of the Court of Appeals, entered July 7, 2023 (Docket Nos. 362288 and 363936).

-1-

# I. BASIC FACTS

In December 2018, McHenry, a pedestrian, was struck by a motor vehicle driven by a resident relative of Farm Bureau's insured. McHenry sought personal protection insurance (PIP) benefits from Farm Bureau, but his claim was denied after investigation. McHenry, thereafter, filed suit against Farm Bureau seeking unpaid PIP benefits. At trial, the parties disputed whether McHenry's injuries resulted from the incident, whether McHenry made material misrepresentations in relation to his claim, and whether McHenry could recover damages for his medical bills, wage losses, attendant care, and replacement services. Farm Bureau's theory of the case was that McHenry was not injured in the incident and that he had misrepresented the nature of his injuries and claims. McHenry maintained that his injuries did not manifest until about 60 days after the incident.

After deliberations, the jury concluded that McHenry did not make any material misrepresentations as part of his claim for PIP benefits. It also found that he had suffered an injury as a result of the incident, and it awarded him $137,261.21, which included his allowable medical expenses, compensation for wage loss, and penalty interest. The jury declined to award damages for attendant care or replacement services.

Following trial, Farm Bureau moved for a new trial, judgment notwithstanding the verdict (JNOV), and remittitur. Farm Bureau also requested attorney fees under MCL 500.3148(2) on the basis that McHenry's claim was fraudulent or excessive. In turn, McHenry requested his attorney fees and costs as either no-fault sanctions or case evaluation sanctions. After oral argument on the motions, the court denied each of Farm Bureau's motions, but granted McHenry attorney fees as a case evaluation sanction. This consolidated appeal follows.

# II. ATTORNEY MISCONDUCT

## A. STANDARD OF REVIEW

In Docket No. 362288, Farm Bureau argues that it was deprived of a fair trial when McHenry's lawyer engaged in misconduct and made statements that served to inflame the racial passions and prejudices of the jury. Farm Bureau raised this issue in its motion for a new trial. We review for an abuse of discretion the trial court's decision on a motion for a new trial. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004). A trial court abuses its discretion when its "decision is outside the range of reasonable and principled outcomes . . . ." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016).

A lawyer's misconduct can deprive the opposing party a fair trial. *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982). When reviewing such a claim,

> the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what

occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action. [*Id.* (citations omitted)]

## B. ANALYSIS

Farm Bureau argues that McHenry's lawyer improperly injected racial bias into the case. In support, Farm Bureau directs this Court to McHenry's lawyer's cross examination of a claims adjuster. The record reflects that McHenry's lawyer asked the adjuster if a "45-year-old suburban white woman in Northville" would receive the same treatment as McHenry, who lived in the City of Detroit. Farm Bureau's lawyer immediately objected, but the court allowed the question. Because the claims adjuster did not hear the question, however, McHenry's lawyer restated the question, this time only asking whether claimants outside of Detroit, such as individuals living in Northville or Livonia, received the same treatment as individuals living in Detroit. Farm Bureau contends that, although the restated question did not reference race, it is well known that Northville and Livonia are examples of "the whitest suburban cities in Metro Detroit." Finally, Farm Bureau points to statements by McHenry's lawyer during a postjudgment hearing where McHenry's lawyer contended that he used Northville as his reference point in his questions to the adjuster because he "resides" in that city. That contention, however, was false. McHenry's lawyer had lived in Northville years before the trial, but, contrary to his representations to the trial court, he was not currently residing in that city.

"While a lawyer is expected to advocate his client's cause vigorously, parties are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice." *Bd of Co Road Comm'rs of Wayne Co v GLS LeasCo, Inc*, 394 Mich 126, 131; 229 NW2d 797 (1975) (quotation marks and citation omitted). Here, the question as to whether McHenry, a black man, had received the same treatment as a hypothetical white woman was improper. There was no evidence whatsoever that McHenry's race had any bearing on the denial of his claim. Such a comment, therefore, interjected racial bias into the trial. Moreover, it is reasonable to infer that the question was intended to interject race. As pointed out by Farm Bureau, Northville and Livonia, are predominately "white suburbs." And given that McHenry's lawyer misrepresented to the trial court that he had selected Northville as a reference point because he was residing there when, in reality, he had lived there years earlier, the conclusion that McHenry's lawyer intentionally interjected race into the proceedings is reasonable.[2]

---

[2] On appeal, McHenry contends that the question was relevant to whether Farm Bureau's rates changed depending on the postal code of where the claim was made. We disagree. McHenry was not Farm Bureau's insured, and the rate that was charged for the no-fault policy had no bearing on whether McHenry was entitled to PIP benefits.

Farm Bureau contends that improperly interjecting racial bias into a case is an error that cannot be subjected to a harmless error analysis. In support, it directs this Court to four cases. We address each in turn.

First, Farm Bureau relies on *Powell v St John Hosp*, 241 Mich App 64; 614 NW2d 666 (2000). In *Powell*, this Court addressed the defendant's claim that the plaintiff's lawyer "twice gratuitously inserted the issue of race into the trial." *Id*. at 79. This Court observed that the lawyer's "emphasis on the alleged prejudice at the hospital exemplified by his statements that he was 'standing up to defend against prejudice,' the accusation that defense counsel was 'acting on prejudice,' and the reminders that defendant's employees allegedly referred to certain classes of people as 'dirt bags' reflect a deliberate strategy to incite the jurors to punish defendant for its bigoty, rather than to carefully consider the facts of the case." *Id*. at 79-80. However, because the *Powell* Court had already determined that reversal was required, it concluded that it was not necessary to determine whether the inappropriate behavior of plaintiff's lawyer, "standing alone," required reversal. *Id*. at 79.

Second, Farm Bureau relies on is *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 289; 602 NW2d 854 (1999). In *Badalamenti*, the plaintiff's lawyer's conduct included using innuendo and accusations that the defendants and their witnesses were engaged in "conspiracy, collusion and perjury to cover up their alleged malpractice." *Id*. at 289-291. The plaintiff's lawyer accused the defense witnesses, without a factual basis, of fabricating their main defense and destroying evidence. *Id*. at 291. He also insinuated that one of the defendants had abandoned the plaintiff's care to engage in a sexual affair with a nurse. *Id*. He had linked this alleged behavior with references to the hospital's "corporate power," and attempted to appeal to the interest of the jurors as "taxpayers." *Id*. The *Badalamenti* Court concluded that the cumulative effect of the improper remarks and arguments was so harmful and prejudicial to the defendants that this Court could not conclude that the verdict was unaffected. *Id*. at 292.

Third, Farm Bureau relies on *Gilbert*, 470 Mich at 762. In *Gilbert*, the Michigan Supreme Court addressed an argument that a jury verdict was the result of passion and prejudice because the plaintiff's lawyer "had repeatedly equated plaintiff's experiences to those of the victims of the Holocaust, and thereby associated defendant's new German co-owners with the Nazis who perpetrated that horror." *Id*. The *Gilbert* Court held that the large verdict was the result of the jury's passion, which the plaintiff's lawyer had inflamed with "prejudice-baiting rhetoric." *Id*. at 755. Moreover, the Court recognized that the plaintiff's lawyer "repeatedly utilized language calling for punitive damages." *Id*. at 778. Given the record, the *Gilbert* Court concluded that a new trial was warranted in light of "the prominence of the prejudicial rhetoric in plaintiff's closing argument and the effect that this rhetoric had on the jury." *Id*.

Finally, Farm Bureau relies on this Court's nonbinding, unpublished opinion in *Silas v Secura Ins Cos*, unpublished per curiam opinion of the Court of Appeals, issued October 10, 2017 (Docket No. 331169). In *Silas*, this Court addressed the defendant's argument that the plaintiff's lawyer made two improper comments during his closing argument. *Id*. at 4. First, the lawyer had suggested that he had uncovered a conspiracy between the defendant and the other driver involved in the accident to prevent the plaintiff from recovering insurance benefits. *Id*. The lawyer also argued that the defendant broke into the plaintiff's social-media account to obtain a photograph and discover the plaintiff's race, which implied that the defendant's decision to stop paying the

plaintiff PIP benefits was because of her race. *Id*. at 4, 6-7. Both arguments were improper. *Id*. at 4. The lawyer's comment about race "was not a one-time occurrence." *Id*. at 7. Instead, the lawyer had asked the defendant's claims representative if there was anything she disliked about the plaintiff. *Id*. When she responded in the negative, the lawyer asked " 'Is there anything about her race?' " *Id*. The lawyer also made remarks during closing argument that suggested that the defendant was a racist company and that the jury should punish the defendant for its racial bias. *Id*. at 7 and n 5. The "numerous improper remarks" resulted in unfair prejudice to the defendant. *Id*. at 7-9. After considering several other claims of error, this Court concluded that each of the errors was "on the verge of justifying reversal in its own right" and that the cumulative effect of all errors resulted in unfair prejudice to the defendant warranting a new trial. *Id*. at 14.

Taken together, *Powell*, *Badalamenti*, *Gilbert*, and *Silas* do not stand for the proposition that reversal is automatic whenever a lawyer engages in improper conduct that reveals a deliberate attempt to inflame the passions of the jury. Moreover, binding caselaw provides that "[c]laims of attorney misconduct are subjected to harmless-error review." *Carlsen Estate v Southwestern Mich Emergency Servs, PC*, 338 Mich App 678, 697; 980 NW2d 785 (2021). A lawyer's comments normally do not constitute grounds for reversal, unless those comments demonstrate a deliberate attempt to deprive the opposing party of a fair and impartial trial. *Id*. "Reversal is required only when the prejudicial statements reveal a deliberate attempt to inflame or otherwise prejudice the jury, or to deflect the jury's attention from the issues involved." *Id*. (quotation marks and citation omitted). And, as explained in *Reetz*, improper comments may not always be incurable or require reversal. *Reetz*, 416 Mich at 111. Rather, it is only when "the theme is constantly repeated so that the error becomes indelibly impressed on the juror's consciousness [that] the error becomes incurable and requires reversal." *Id*.

Here, although the conduct of McHenry's lawyer was improper, reversal is not required. The theme of racial bias did not permeate the trial. No comments were made referencing racial bias during jury selection, opening statements, closing arguments, or during the questioning of the majority of the witnesses. Rather, the issue was presented to the jury in two questions of a single witness. Thus, as recognized by the trial court, the improper comments were isolated and brief. Prejudice caused by the questions was lessened by the fact that the claims adjuster denied treating any claimants differently based upon where they lived. It was also lessened by the court's instructions to the jury to not base their decision on prejudice or race. See *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013) (stating that there is a presumption that jurors follow their instructions and that the instructions cure most errors). Accordingly, on this record, although McHenry's lawyer made improper comments, reversal is not required.

III. JURY-SELECTION PROCESS

A. STANDARD OF REVIEW

Next, Farm Bureau argues that the trial court abused its discretion by denying its for-cause challenges to Prospective Jurors 3 and 6. Farm Bureau contends that the denial of its for-cause challenges resulted in the improper impanelment of Juror 1. The decision whether to grant a for-cause challenge is reviewed for an abuse of discretion. *Poet v Traverse City Osteopathic Hosp*, 433 Mich 228, 236, 251; 445 NW2d 115 (1989).

## B. ANALYSIS

MCR 2.511 governs the process for impaneling the jury for a civil trial. Under MCR 2.511(E),

> The parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person:
>
>> (1) is not qualified to be a juror;
>>
>> (2) is biased for or against a party or attorney;
>>
>> (3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;
>>
>> (4) has opinions or conscientious scruples that would improperly influence the person's verdict[.]

In addition, each party may peremptorily challenge three jurors without cause. MCR 2.511(F)(1) and (2).

To determine whether a trial court's denial of a for-cause challenge warrants a new trial, the following factors should be considered: "(1) the court improperly denied a challenge for cause, (2) the aggrieved party had exhausted all peremptory challenges, (3) the party demonstrated a desire to excuse another subsequently summoned juror, and (4) the juror whom the party wished later to excuse was objectionable." *Poet*, 433 Mich at 241. The factors are considered based upon the totality of the circumstances of each case. *Id*. at 258 n 33. Although the decision is within the trial court's sound discretion, the trial court must balance its discretion with its obligation to ensure a litigant's right to a fair trial. *Id*. at 236-237. In cases where there is reasonable apprehension of prejudice, i.e., where a prospective juror "affirmatively articulates a particularly biased opinion which may have a direct effect upon the person's ability to render an unaffected decision," the trial court should err on the side of granting the for-cause challenge. *Id*. at 238. The question is whether there is enough reason to believe that the prospective juror could not be indifferent. *Id*. at 239. Further, although some degree of prejudice can be presumed when a party is forced to use a peremptory challenge, the party must demonstrate actionable prejudice by establishing the four factors outlined earlier. *Id*. at 240-241.

Farm Bureau cannot meet the first *Poet* factor because the trial court did not improperly deny Farm Bureau's for-cause challenges to Prospective Jurors 6 and 3. We consider each denial in turn.

With regard to Prospective Juror 6, Farm Bureau moved to dismiss her for cause because she disclosed that she had a breathing problem that might cause her to stop breathing and render her unable to pay addition to testimony. The trial court denied the motion, and Farm Bureau's lawyer later used a preemptory challenge to dismiss her. Based upon the record, the trial court could have excused Prospective Juror 6 for cause when she said she could stop breathing during

the trial. However, Prospective Juror 6 eventually concluded that she could fairly evaluate the evidence and be fair to both parties, and the trial court stated that it was willing to accommodate her medical condition if an issue were to arise at trial. Under the circumstances, the trial court did not abuse its discretion by denying the for-cause challenge to Prospective Juror No. 6.

Prospective Juror 3 identified herself as a pediatric nurse who worked with injured children and trauma patients. When asked whether she could serve as a fair juror, she explained:

> I don't like to see nobody in pain. I'm going to tell you that right now. I deal with a lot of issues when I see people in pain. And I have a hard time.

Yet, when asked if she could be a fair juror, she stated that she could. Farm Bureau's lawyer challenged Prospective Juror 3 for cause, but the challenge was denied before he even had a chance to articulate the basis for his challenge. Farm Bureau's lawyer later used a peremptory challenge to dismiss her. We conclude that the trial court's ruling was not an abuse of discretion. Prospective Juror 3 stated that she could be fair to both sides, despite her work as a pediatric nurse. Additionally, while she stated that she did not like to see anyone in pain, she explained that her work revolved primarily around children, and there were no children involved in this case. Therefore, Farm Bureau cannot demonstrate that Prospective Juror 3 had a bias against it or a state of mind that would prevent her from rendering a just verdict. See MCR 2.511(E)(2) and (3).

The next *Poet* factor requires this Court to consider whether Farm Bureau exhausted all of its preemptory challenges. Here, at the time that Juror 1 was questioned Farm Bureau had not exhausted its preemptory challenges. On appeal, Farm Bureau argues that *Poet* does not require the party challenging the jury-selection process to exhaust all peremptory strikes at the time the objectionable juror is examined. Instead, "just a single peremptory strike warrants appellate relief." We disagree because the defendant must establish that the error forced the defendant to exhaust its peremptory challenges. *Poet*, 433 Mich at 240 n 14 ("The rule in this State is that a party cannot complain of error in the overruling of a challenge for cause if it does not force him to exhaust his peremptory challenges.") (quotation marks and citation omitted). Thus, we conclude that this factor weighs against reversal.

With regard to the third *Poet* factor, given that Farm Bureau eventually used each of its preemptory challenges, it appears that Farm Bureau desired to excuse another subsequently summoned juror after its lawyer questioned Juror 1. See *Poet*, 433 Mich at 231.

Regarding the fourth *Poet* factor, Farm Bureau has not established that Juror 1 was objectionable. In *Poet*, the Michigan Supreme Court concluded that to find a potential juror objectionable "there must, first, be a specific indication, on the record, that the party seeking removal finds the individual objectionable. Second, the objector must expressly articulate or list the particular reasons why the juror is objectionable." *Poet*, 433 Mich at 241 n 15. Here, Juror 1 stated that she was a business consultant who taught people about politics and policy. She also stated that she had recently been in a "small" car crash and that her friend's insurance company did not help her friend at all. She added that because she studied "politics and policy" she understood "when people tend to twist certain facts to sway in one direction or another and because I'm hyperaware of those kind of things, I–it tends to change the way I view certain situations." She explained that she felt like she "might be a bit more bias[ed] in this particular case." The court

instructed Juror 1 that individuals will have biases but that it was important to set those biases aside and consider only the facts. When asked if she could set aside her biases and consider only the facts, she stated that she could "try" her best. She also stated that she felt she could render a fair verdict. During jury selection, Farm Bureau did not express any concern with having Juror 1 on the jury. Rather, at the end of his questioning of her, he stated that having her on the jury "actually might be a good thing," and that she was "kind of what we want." Ultimately, Farm Bureau's lawyer did not challenge Juror 1 for cause or use a peremptory challenge on her, despite the fact that he still had two available peremptory challenges. He would later use those peremptory challenges. However, on this record, there is no indication that Farm Bureau's lawyer found Juror 1 objectionable and he provided no reasons for why she would be objectionable.

Taken together, the *Poet* factors weigh against reversal in this case. We conclude, therefore, that the trial court did not err by denying a new trial on the basis of alleged errors in the jury-selection process.

Next, Farm Bureau relied upon the affidavits of its two defense lawyers, who both stated that, following trial, an anonymous juror informed them that the jurors initially agreed that McHenry did not meet his burden of proof at trial. However, Juror 1 then allegedly discussed her own research and views about race and informed the jury that " 'black men have been historically mistreated by insurance companies.' " The anonymous juror told the defense lawyers that it was that juror's belief that these statements influenced the jury and changed the outcome in the case. We conclude that this is not a basis for reversal.

MCR 2.611(A)(1)(b) provides that the trial court may grant a new trial based on jury misconduct whenever the substantial rights of the moving party are materially affected. The general rule is that a party may not impeach a jury verdict through the use of subsequent juror affidavits asserting misconduct that occurred in the jury room. *People v Budzyn*, 456 Mich 77, 91; 566 NW2d 229 (1997). "Rather, oral testimony or affidavits may only be received on extraneous or outside errors, such as undue influence by outside parties." *Id*. See also MRE 606(b)(1) (prohibiting a juror from testifying or submitting an affidavit during an inquiry into the validity of a jury verdict about any statement made during the jury's deliberations, unless the juror is testifying about extraneous prejudicial information, an outside influence on the jury, or a mistake when entering the verdict on the verdict form).

In *Shiner v Detroit*, 150 Mich App 420; 387 NW2d 872 (1986), the defendants moved for a new trial on the basis that a juror failed to disclose a bias against the defendant's police department during voir dire. *Id*. at 421-422. The defendant relied on the affidavits of two of the defendant's representatives, who stated that their lawyer spoke with a juror after the conclusion of the trial, and that juror responded by indicating that he had a bias against the police. *Id*. at 423. This Court held that the general rule prohibiting reliance on juror affidavits also applies when the affidavit is submitted by a nonjuror and is based on hearsay statements. *Id*. at 425. The trial court could not grant a new trial based solely on the affidavits. *Id*. at 425-426.

Here, the anonymous juror's alleged statements are hearsay. Farm Bureau contended, however, that the juror's statements were admissible as a hearsay exception under MRE 803(1), as a present sense impression, or under the catchall hearsay exception in MRE 804(b)(7). The trial

court rejected Farm Bureau's argument under both hearsay exceptions. In doing so, the court did not abuse its discretion.

MRE 803(1), at the time of trial, this rule provides that an exception to the general prohibition against the admission of hearsay for "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." MRE 803(1), as amended May 21, 2001, 464 Mich clxxvii (2001). The anonymous juror's statements were not a present sense impression. According to Farm Bureau's trial lawyers, after trial, the juror disclosed the information regarding what Juror 1 allegedly stated during deliberations. Thus, the juror's statements were not describing or explaining an event or condition while the juror was perceiving it. Under these circumstances, the juror did not describe the event or condition "immediately thereafter." See MRE 803(1).

Next, MRE 804(b)(7), at the time of trial, applied when a witness was unavailable to testify at trial and allowed admission of "[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. MRE 804(b)(7), as amended May 21, 2001, 464 Mich clxxviii (2001).

Arguably, the anonymous juror was absent and Farm Bureau's lawyer was unable to procure their attendance through reasonable means. However, even assuming that the juror was unavailable, Farm Bureau was required to establish that the anonymous juror's statements had an equivalent circumstantial guarantee of trustworthiness. As the trial court explained, "A purported statement of someone who insists on remaining anonymous and refuses to sign an affidavit is neither trustworthy nor reliable." The trial court correctly concluded that the evidentiary rules and the interests of justice were not best served by admission of this inherently unreliable statement into evidence. See MRE 804(b)(7). Thus, defendant could not rely on this juror's hearsay statements to establish that Juror 1 was objectionable. See *Shiner*, 150 Mich App at 425.

## IV. CROSS-EXAMINATION

### A. STANDARD OF REVIEW

Farm Bureau next argues that the trial court interfered with and impeded its cross-examination of Joseph Banford. Banford was McHenry's friend, and he provided McHenry with attendant care, replacement services, and offered him employment after the incident. We review the trial court's decisions regarding the questioning of witnesses and the scope of cross-examination for an abuse of discretion. *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 454; 540 NW2d 696 (1995).

### B. ANALYSIS

A party has a general right to cross-examination, which the court cannot unduly interfere with or restrain. *Hayes v Coleman*, 338 Mich 371, 380; 61 NW2d 634 (1953). The Michigan

Court Rules outline the proper scope of cross-examination and afford the trial court discretion over the mode and method of interrogation. At the time of trial, MRE 611(a) provided that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a), as amended August 25, 2009, 485 Mich cccix (2009). "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination." MRE 611(c), as amended August 25, 2009, 485 Mich cccix (2009). Additionally, when ruling on evidence, the trial court had broad discretion to make statements about the character or form of the evidence, a party's objection, and the court's rulings. MRE 103(b), as amended October 23, 2001, 465 Mich clxxi (2001).

Farm Bureau argues that witness credibility was a key issue at trial, rendering cross-examination of Banford particularly important. Farm Bureau first argues that it attempted to elicit testimony from Banford that he never submitted documentation to Farm Bureau regarding his offer of employment to McHenry, but the trial court interrupted this questioning. The court's interruption was not an abuse of discretion. Banford had stated that he did not understand the question, and the court was able to exercise reasonable control over the presentation of evidence to avoid needless consumption of time. See MRE 611(a). Further, Farm Bureau's lawyer proceeded to cross-examine Banford at length about his job offer to McHenry, including by asking Banford whether he had anything in writing to support the job offer, such as a signed contract, text messages, or other writings. Farm Bureau's lawyer never sought to impeach Banford's trial testimony on this issue through his deposition. Thus, the court did not preclude Farm Bureau's lawyer from exploring this issue on cross-examination. Farm Bureau's substantial rights were not affected. See MRE 103(a).

Farm Bureau also argues that the trial court prevented its lawyer from refreshing Banford's recollection and impeaching him by having him review his deposition transcript. Banford testified that he filled out the service logs for the attendant care and replacement services he provided to McHenry. He indicated that he may have received the forms from a lawyer, but could not recall for certain. Farm Bureau's lawyer attempted to refresh Banford's memory on this issue with his deposition transcript, but the court did not allow him to do so because Banford had testified that he did not remember. The trial court's ruling was not an abuse of discretion. Moreover, the jury declined to award McHenry any damages for his attendant care or replacement services, so Farm Bureau cannot demonstrate any prejudice resulting from the trial court's ruling. See MRE 103(a).

Finally, Farm Bureau argues that the trial court interrupted his cross-examination of Banford regarding whether he was aware that McHenry testified that he was healthy in January 2020, which would undermine his claim for attendant care and replacement services. The record does not support that assertion. Rather, the interruption was caused by McHenry's lawyer objecting on hearsay grounds. The court sustained the objection. The court explained that he could ask the question in the proper form by asking whether Banford *was aware* of McHenry's claim that Banford was helping him as late as January 2020. When Banford was asked that question, he stated that he did not know, that he did not remember, and that "this is new to me." Consequently, the record does not support Farm Bureau's argument that the court interrupted his cross-examination and that the court's directions confused the jury.

-10-

## V.  WAGE-LOSS CLAIM

## A.  STANDARD OF REVIEW

Farm Bureau argues that this Court should reverse the jury's award of $10,000 for McHenry's wage loss-claim because McHenry did not support his wage losses with record evidence, and because McHenry relied on a wage-loss theory that was not revealed before trial. Farm Bureau raised this issue at trial by moving for a directed verdict, and raised it again in its postjudgment motion for a new trial, JNOV, or remittitur.  We review de novo a trial court's decision on a motion for a directed verdict and a motion for JNOV.  *Taylor v Kent Radiology, PC*, 286 Mich App 490, 499; 780 NW2d 900 (2009).  Similarly, we review a trial court's decision on a remittitur request for an abuse of discretion.  *Diamond v Witherspoon*, 265 Mich App 673, 692-693; 696 NW2d 770 (2005).  "Remittitur is justified when a jury verdict exceeds the highest amount the evidence will support."  *Id*. at 694.  This requires an examination of whether the verdict was the result of "improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact, whether it was within the limits of what reasonable minds would deem to be just compensation for the injury inflicted, and whether the amount actually awarded is comparable to other awards in similar cases."  *Id*.  The court should not set aside the verdict simply because the jury's method of computing damages cannot be determined, unless it falls outside the range of evidence presented at trial.  *Id*.

## B.  ANALYSIS

McHenry requested a wage-loss award of $131,818.68.  The jury awarded him $10,000. At trial, Farm Bureau moved for a directed verdict on the wage-loss claim, arguing that McHenry raised the fact of Banford's job offer for the first time at trial.  The court denied the motion and explained that McHenry had claimed wage losses more generally as an asbestos worker, and the Banford job offer fell within that claim.  After trial, Farm Bureau moved for a new trial, a JNOV, or a remittitur, arguing, in relevant part, that McHenry was not employed for 10 months before the accident and that McHenry relied on a previously undisclosed wage-loss theory to support that his employment was only temporary.  Farm Bureau emphasized that Banford did not mention the job offer during his deposition.  Farm Bureau also argued that the $10,000 damages award for wage loss was based on speculation.  The trial court denied the motion, reasoning that Farm Bureau had the opportunity to cross-examine McHenry and Banford on the wage-loss claim and that McHenry had provided evidence to support the amount of his wage loss.

MCL 500.3107(1)(b) provides, in relevant part, that PIP benefits are available for "[w]ork loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured."  MCL 500.3107a adds that "work loss for an injured person who is temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month employed full time preceding the accident."  MCL 500.3107a.  The burden is on the claimant to prove the earnings loss.  *Sullivan v North River Ins Co*, 238 Mich App 433, 437; 606 NW2d 383 (1999). The phrase "temporarily unemployed" refers to the unavailability of the employment itself, and not to the plaintiff's physical inability to do the work.  *MacDonald v State Farm Mut Ins Co*, 419 Mich 146, 153; 350 NW2d 233 (1984).

The parties do not dispute that McHenry was unemployed at the time of the accident, but dispute whether that unemployment was temporary. Kevin Meagher, McHenry's former employer, testified that McHenry was trained to work in asbestos removal and had worked about 158.5 hours total for Local 207. But he had not worked on a contract through the union since about 10 months before the accident despite the general availability of other jobs. Meagher confirmed McHenry's rate of pay through the union was $30.77 per hour, which provided proof of his earnings for his last month of full-time employment. However, it is not clear from the record why McHenry did not take on any other union jobs between February 2018 and December 2018, despite the apparent availability of those jobs. Farm Bureau's lawyer did not ask him directly during his deposition. Thus, Banford's job offer was critical to McHenry's wage-loss claim because it was the only evidence that McHenry was actively seeking employment within 10 months before the incident. See *Frazier v Allstate Ins Co*, 231 Mich App 172, 177; 585 NW2d 365 (1998) (stating that "a bare assertion of intent to secure employment without any corroboration of such intent or actions taken to obtain employment during the period of unemployment is insufficient to render an injured party 'temporarily unemployed.' ").

There is no indication that Banford's job offer was revealed at any point before trial. McHenry testified at trial that he was laid off from his last job through Local 207 but that he had another job lined up to work for Banford. During McHenry's cross-examination, Farm Bureau's lawyer noted that it was the first time that he heard that McHenry was working for Banford. However, Banford testified that he had offered McHenry a job approximately a month before the accident and that they were going to finalize the details of the "potential contracts" for the job McHenry would work around February 2019. He explained that McHenry did not start working earlier because Banford did not finalize the contracts for the asbestos work until February 2019. Farm Bureau's lawyer did not attempt to impeach Banford with his deposition testimony, despite the fact that Banford did not mention the job offer during his deposition and even indicated he was not involved in that line of work. The testimony of Banford's job offer was evidence that McHenry would have been actively seeking employment before the accident and that the unemployed status would not have been permanent if the injury had not occurred. See *Frazier*, 231 Mich App at 176.

Farm Bureau argues that it was surprised by the trial testimony about Banford's job offer, but its lawyer was able to cross-examine both McHenry and Banford on the fact that this theory was not disclosed before trial. During McHenry's testimony, Farm Bureau's lawyer pointed out that this information was new to him. He did not attempt to impeach Banford through his deposition testimony. Moreover, while McHenry and Banford did not reveal the job offer during their depositions, Farm Bureau's lawyer never asked McHenry or Banford whether McHenry had another job lined up before the accident or whether McHenry had a gap in his employment before the incident.

Farm Bureau notes in its brief on appeal that it filed motions in limine that precluded McHenry from introducing evidence at trial that was not already produced in discovery, and that precluded McHenry from requesting damages for claims that were not submitted at least 30 days before trial. "An order in limine is an instruction not to mention certain facts unless the court's permission is first obtained." *Zantop Int'l Airlines, Inc v Eastern Airlines*, 200 Mich App 344, 360; 503 NW2d 915 (1993). The purpose of the motion in limine regarding the evidence at trial was to prevent McHenry from admitting "documents, records, bills, affidavits, calendars, or forms" that were not produced before trial. The court granted both motions. Whether this order

barred the testimony about Banford's job offer is a close issue. The orders did not preclude McHenry's lawyer from questioning witnesses at trial on a subject that may not have been explored in much detail during discovery. Farm Bureau does not contend that McHenry attempted to produce a witness or document that he did not produce in discovery or that he was pursuing a completely new claim or theory. We note that Farm Bureau deposed both McHenry and Banford before the trial and could have explored the wage-loss issue in greater detail during those depositions. And there is no dispute that McHenry made a wage-loss claim before trial. Finally, the order was entered on the last day of trial, *after* Banford had already testified. Therefore, the order in limine precluding new evidence did not preclude the testimony about Banford's job offer. Regarding the order precluding McHenry from requesting damages for claims not submitted at least 30 days before trial, McHenry made a wage-loss claim well in advance of trial. The only new information was Banford's job offer. So, McHenry did not request damages that were not submitted to defendant at least 30 days before trial. Therefore, the orders in limine did not preclude the testimony about Banford's job offer.

Next, although it is not clear how the jury calculated the wage losses at $10,000, the court was not required to set aside the jury verdict simply because the jury's method of computing damages cannot be determined, particularly when the jury's verdict was significantly lower than McHenry's requested wage losses. See *Diamond*, 265 Mich App at 694.

Finally, Farm Bureau argues that the jury should not have included the wage-loss award in the calculation of penalty interest under MCL 500.3142(2) because it did not receive reasonable proof of the fact and the amount of the wage loss at least 30 days before the trial. See MCL 500.3142(2) and (4) (providing for a 12% interest rate for overdue PIP benefits if the insurer does not pay within 30 days after receiving reasonable proof on the fact and amount of the loss). As noted above, there is nothing on the record indicating that Farm Bureau was aware of Banford's job offer before trial. Because Banford's job offer was critical to the wage-loss claim, the failure to present Farm Bureau with reasonable proof of the fact that Banford had made a job offer precludes the award of penalty interest on the wage-loss award. Accordingly, we reverse the award of penalty interest related to the wage-loss claim.

## VI. CASE EVALUATION SANCTIONS

### A. STANDARD OF REVIEW

In Docket No. 363936, Farm Bureau argues that the trial court erred by granting McHenry's request for attorney fees as case evaluation sanctions after MCR 2.403 was amended effective January 1, 2022. We review de novo the trial court's decision on the issue whether to award case evaluation sanctions. *RAD Constr, Inc v Davis*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 361177 and 363142); slip op at 8. Similarly, we review de novo the proper interpretation and application of the Michigan Court Rules. *Id*. at ___; slip op at 8. We review for an abuse of discretion the issue whether the application of a new court rule would " 'work injustice' " under MCR 1.102. *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 336; 602 NW2d 596 (1999).

## B. ANALYSIS

At the time the court entered the judgment, the issue of case evaluation sanctions remained open because Farm Bureau intended to file postjudgment motions, which may have altered the judgment. McHenry did not waive the right to sanctions because the issue was preserved in the original judgment. As the trial court noted, the issue of case evaluation sanctions became ripe for a decision after the court denied Farm Bureau's postjudgment motions. The trial court entered a subsequent order awarding attorney fees and prejudgment interest, which Farm Bureau acknowledges was a separate "final order" appealable as of right under the Michigan Court Rules. See MCR 7.202(6)(a)(*iv*). As for interest, McHenry requested prejudgment interest on the amount of any attorney-fee award, as well as the judgment itself. The court's order contained the prejudgment interest, which was based solely on the verdict. Farm Bureau does not challenge the award of prejudgment interest. Therefore, McHenry did not waive his argument regarding case evaluation sanctions.

Next, Farm Bureau argues that the trial court erred by granting McHenry's request for case evaluation sanctions after the court rule was amended to remove the sanctions provision. The parties do not dispute on appeal that McHenry would have been entitled to case evaluation sanctions under the version of MCR 2.403(O)(1) in effect at the time of the case evaluation. However, the Michigan Supreme Court amended MCR 2.403, effective January 1, 2022, and removed completely Subpart (O), which previously allowed for sanctions. MCR 2.403, as amended by 508 Mich clxiii (2021). This Court recently held, in *RAD Constr*, ___ Mich App at ___; slip op at 8-9, that the amendment to MCR 2.403 applied to a case that was evaluated under the previous version of the court rule but decided on the merits after amendment went into effect. The *RAD Constr* Court explained that MCR 1.102 requires the court to apply the current version of the court rules to pending cases, and that amended court rules applied unless the court had a reason to apply the old court rules. *RAD Constr*, ___ Mich App at ___; slip op at 8. MCR 1.102 requires the court to apply the new court rule unless doing so would work an injustice.

McHenry argues that applying the current version of MCR 2.403 would work an injustice because McHenry relied on the potential for case evaluation sanctions when he made strategic decisions in the case, such as the decision to proceed to trial. In *Reitmeyer*, 237 Mich App at 337, this Court held that a new rule would work an injustice " 'where a party acts, or fails to act, in reliance on the prior rules and the party's action or inaction has consequences under the new rules that were not present under the old rules.' " (Citation omitted.) Here, McHenry did not know whether he would be entitled to case evaluation sanctions when the new court rule went into effect because the trial had not occurred. This case was tried in January 2022. By that point, the new version of MCR 2.403 was in effect. McHenry should have been aware of the change to the court rule before he made his final decision to proceed with trial. The court entered the judgment on February 8, 2022. The total judgment of $137,261.21 was slightly above the case-evaluation award of $132,500. McHenry moved for case evaluation sanctions on February 8, 2022, and the court did not decide that case evaluation sanctions were appropriate until July 1, 2022, which was six months after the new rule became effective. For these reasons, McHenry cannot establish that applying the new version of the court rule would work an injustice. Accordingly, the trial court erred by granting McHenry's attorney fees as case evaluation sanctions under the preamendment version of MCR 2.403. Because we conclude that case evaluation sanctions were not available,

we do not address Farm Bureau's remaining arguments relating to the award of attorney fees as a case-evaluation sanction.

## VII. NO-FAULT SANCTIONS

## A. STANDARD OF REVIEW

Next, Farm Bureau argues that the trial court abused its discretion when it denied its request for attorney fees under MCL 500.3148(2) because McHenry's claim was in some respect fraudulent or so excessive that it had no reasonable foundation. We review the trial court's decision whether to award or deny attorney fees under MCL 500.3148(2) for an abuse of discretion. *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 361; 824 NW2d 609 (2012). However, for purposes of MCL 500.3148(2), the " 'trial court's findings regarding the fraudulent, excessive, or unreasonable nature of a claim should not be reversed on appeal unless they are clearly erroneous.' " *Id*. (citation omitted).

## B. ANALYSIS

MCL 500.3148(2) provides, in relevant part that "[a] court *may* award an insurer a reasonable amount against a claimant as an attorney fee for the insurer's attorney in defending against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation." (Emphasis added.) The language of the statute is discretionary, and the court is not required to award attorney fees if it finds that the claim was fraudulent or excessive. *Gentris*, 297 Mich App at 361-362. The trial court's findings of fact only need to survive a clear-error challenge. *Id*. at 362. "Further, an award of attorney fees under the statute can be entered by a court on the basis of either fraud standing alone or excessiveness with no reasonable foundation or, of course, on the basis of both factors." *Id*. at 362.

At trial, the jury awarded McHenry $137,261.21 in damages. Nevertheless, Farm Bureau argues that certain aspects of McHenry's claim were fraudulent or unreasonably excessive. McHenry initially claimed that he needed ongoing replacement and attendant-care services, at least through his early 2020 deposition, but later reduced those claims to only about two months of services. Farm Bureau notes that this occurred after it conducted surveillance that allegedly depicted McHenry carrying heavy items without assistance. The jury did not award McHenry any damages for attendant care and replacement services. Farm Bureau argues, without factual support, that the jury reached this conclusion because it was persuaded by the video surveillance and Farm Bureau's fraud argument.

The jury's reasoning for not awarding attendant-care or replacement-service damages is not clear from the record, and the jury may have simply concluded that McHenry could not establish the elements of his claims, particularly when he testified at trial that his injuries did not manifest until around 60 days after the accident. McHenry's evidence regarding the duration of the attendant care and replacement services was inconsistent, but this does not necessarily mean that his claims were fraudulent. Further, the jury addressed the fraud issue and concluded that McHenry did not make any misrepresentations in support of his claim for PIP benefits. The jury was not asked whether McHenry's claims were excessive. Considering the relatively low value

of these claims, the fact that the jury did not award damages is not an indication that the claims were so excessive that they had no reasonable foundation.

As for the wage-loss claim, the jury awarded McHenry $10,000 in damages. Farm Bureau points out that this is a fraction of the $131,818.68 that McHenry requested in wage-loss damages. While the damages award may suggest that the jury found the wage-loss request excessive, there is no evidence in the record that the jury concluded definitively that the claim was fraudulent or unreasonably excessive. As the trial court noted when ruling on Farm Bureau's attorney-fee request, the jury expressly concluded that McHenry did not make material misrepresentations. The jury was not asked whether McHenry's wage-loss claim was excessive. Therefore, the trial court did not abuse its discretion by denying Farm Bureau's request for attorney fees under the no-fault act.

Affirmed in part and reversed in part. No taxable costs are awarded, neither party having prevailed in full. MCR 7.219(A).

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ Michelle M. Rick